May it please the Court, Mary Davis for Treswaun Thompson. I would like to request one minute for rebuttal. You may have it. Treswaun Thompson is appealing a denial of his motion to withdraw his guilty pleas to two counts of drug conspiracies and an arson count. One of the grounds that he raised was he had no opportunity to listen to recordings that were made of him from the jail. There were also transcripts made of these recordings, but he was not allowed access to those. Instead, he was provided with a discussion about, but not the actual papers, summaries of those calls provided by the government to his attorney. The attorney had all three of these, the real recordings, the actual transcript of the words spoken, and the summaries. The problem with the summaries is that in quotation marks in the summaries of Treswaun Thompson's calls, his words were not put in the quotation marks. So in the quotation marks that were discussed with Treswaun of his purported statements, it's not his words, but the agent's interpretation of those words. He raised this as a reason that he should be allowed to withdraw his guilty plea, and the judge denied it based on the fact that the defendant is not entitled to personally view all the discovery in his case or all the discovery that he asks for. The error here is that statements of a defendant are somewhat special, especially in this case. First of all, there were 45 calls that the government targeted as the important part of their case, the crux of their case, the overwhelming evidence that they would be pursuing at trial. Those calls were provided to the attorney as were the transcripts, but it was essentially the case. He was in jail and he was supposedly directing an operation that continued the drug conspiracy. Instead of these, which he asked for and asked for before he was called upon to plea, he got the money. Those weren't his words, but that's all that his attorney discussed with him about his statements. So it led him to be confused and frustrated and to just go along with the plea. I think that the judge made several distinctions. The same judge took the plea and heard the motion to withdraw, and the judge who was involved in this found that he knowingly entered the plea, it was voluntary, that his version the second time around is not supported by what he said the first time around. So your abstract issue, I think, is not really what the case is about. It's in a context of the trial judge having fully satisfied himself that all of the requirements for a guilty plea were met the first time. So don't you have to respond to that? Well, no, Your Honor, because what I'm saying is the judge made an error in his ruling by saying the defendant isn't entitled to all the discovery in the case. We were never saying, we are not saying he, a defendant as a matter of law, is entitled to all the discovery. We're saying two things about the discovery in this case. One is in the circumstances of this case, where not only are you denied access as a defendant to your own statements, but you're given misleading, inaccurate statements that you have a right to personally review it, and that the court did not fail to make a distinction between his own statements and all the discovery in the case, particularly where it is the case. The case against him basically was these phone calls. It might, that argument could have been made the first time around, yes? It was, it was raised. He did raise it in his motion to withdraw his guilty plea. He said, I was misled by these quotation marks around things that I didn't say, and it made me confused, it made me frustrated, and so I just was easily led by my lawyer who pressured me into a plea. He did not make the argument, I have not seen enough to enter into a guilty plea the first time around. He did not say it at the Rule 11, Your Honor, but in his motion to have his first attorney, he had three attorneys. In the motion, in the motions for withdrawal by his first and second attorney, he did say it. He also said it in his motion to withdraw his guilty plea. We're not arguing that the Rule 11 wasn't perfect. We'll concede. But we're saying that there can be things outside of the Rule 11 that allow or provide a just and reasonable ground for a plea, even in spite of a good Rule 11. So the idea is, in between, he learned that the evidence on which he was relying when he made the initial plea was misleading, and that's the basis. After the plea, Your Honor. After the plea, he learns that the evidence was just a paraphrase and it wasn't as strong as he thought it was, and that's the basis of the plea. So you're saying that he didn't make the distinction between your own statements, which are different. They're different in terms of discovery, in terms of evidence, impact. Well, let me put it another way. If I understand what you're saying now, you can win, regardless of whether you get access to all this discovery. All you're arguing now, if I hear you right, is simply that when a defendant moves to withdraw a plea because they contend they were misled as the evidence that led to their initial plea, a judge has to respect that. Is that the argument? In this case, the judge should have, because it has so many important aspects of your own statements being used against you, and not having an opportunity to review them. You're the only one who knows what you meant when you said a word. You're the only one who knows the context or an explanation for what you said, so that it was important that he have an opportunity to discuss his own statements with his lawyer, not a paraphrase made up by an agent. He missed the opportunity, even though the lawyer had them, and the lawyer never said. The lawyer had them. Right. So he's saying, I learned after the plea that there's something I should have discussed at further length with my lawyer, and I still need that opportunity? No, Your Honor. He was asking before the plea, can I hear the recordings? Can I see the transcripts? The defendant was asking for that before he pled. And he did not make that argument at the time he pled? The Rule 11 I conceived was fine. This is all influences outside of the judge's hearing. Is there anything in the record that shows why his understanding of that evidence changed, or what led him to suddenly discover that the material he had looked at prior to the plea was misleading, when he didn't seem to think it was misleading at the time he pled? When he had the third lawyer who listened to the tapes and reviewed them, that was the lawyer who filed the motion to withdraw the guilty plea, the third lawyer. Because that lawyer was the one who identifies that these are just paraphrases, this language isn't as strong as it sounded? Actually, he asked the government, and the government said, oh, these were just paraphrases. And that was not known to him pre-plea? I don't know, Your Honor. We know that from the record? I don't know. It's not in the record. I know he discovered it. He knew there were real tapes and was asking for them from the beginning. I know that when the third lawyer filed the motion to withdraw the guilty plea, he knew about the misleading quotations. So the point is, thank you. Good morning, Your Honor. It's Renee Bunker on behalf of the United States from the District of Maine. Mr. Thompson pled guilty to two drug trafficking conspiracies and to burning his girlfriend's apartment down. And one of the biggest problems that I think, Judge Barron, you were just touching on with this appeal and the motion below is that even after hearing those calls with attorney number three, he has pointed to nothing in those calls that would have rendered his plea involuntary or unknowing. Even after hearing those calls, he has never, below or on appeal, disputed the accuracy of the facts in the prosecution version that he told the Rule 11 court were true to his personal knowledge and that he didn't disagree with at all. He has never explained, here or below, what in those calls rendered the facts in that prosecution version somehow now untrue or disagreeable. He has never, and I'll come back to the call summaries, the defense itself is all over the place in terms of when Mr. Thompson received what or reviewed what. But he has never, even after going through three attorneys and now four, explained after reviewing the calls what in those call summaries was rendered inaccurate or somehow rendered his plea involuntary. And one more point is that he has never, as I reviewed the record, as a whole, I didn't see anything intimating any desire to go to trial. So with that framework, going back to Chief Judge Lynch, your appropriate starting point is the meticulous, undisputed, meticulous Rule 11 colloquy, which is not, again, not even disputed here. And given a perfect opportunity to tell Judge Hornby that, geez, I'm not ready to plead guilty, I need a little more time to look at this discovery, Mr. Thompson failed to do so. So as a matter of law, the cases we cite, an appellant has pointed to nothing that says a defendant has a right, per se, to review every piece of evidence or even that evidence he requests to see. And we disagree that Judge Hornby somehow missed the defendant appellant's argument. Had Mr. Thompson done that, and I think Judge Hornby intimated below, that of course he would not have pressed forward. He would never have accepted the plea. We would have broken and made accommodations for Mr. Thompson to listen. And going back to, I think, Judge Barron, your question about who knew what when, I want to point the court to three parts of the record in particular. Appendix page 49 to 50 is a transcript of the November 18, 2011 hearing on the motion for Attorney 1, Mr. Billings, to withdraw. Mr. Billings told the court that he had listened to some of the calls with Mr. Thompson, and they both, Billings thought, had come to the conclusion that given the nature, given common sense about the substance of those calls, the expletive language, derogatory comments by Thompson, quote, the chances for an acquittal were nil. Thompson has never disputed that, below or on appeal. Look at appendix page 122. It's the October 24, 2012 Conference of Counsel with Mr. Vincent, attorney number three, who told the court, I, referring to Vincent, actually listened to a call that was provided that was Thompson, quote, talking to his father back before he entered the plea, end quote. When Thompson, quote, was talking to his father, he indicated to his father that he had listened to some of the calls in his case, but had not been given the opportunity to listen to all of them. There's two officers of the court representing that Thompson at least had some access to the calls, albeit probably not all. There was voluminous discovery. Everybody agreed. Go to appendix page 180 and 182. That's, and this refutes perhaps appellant's contention that it's only the defendant who possibly could testify about what was meant in those calls. That's a call, a transcript of a call that the government submitted to the court because it was a call by Thompson to the mother of his child made just five days before his plea. And that transcript corroborates attorney Billings' representations to the court about the apparent consensus between client and counsel about the incredibly damaging nature of those calls to the defense. And Thompson in that call talks about the aggressive nature of the calls and how he already knew by then, five days before his plea, that the conspirators, the women he was directing, were going to come in and testify about what Thompson was telling, what he meant in those calls. Quote, what he meant when he was saying to do this and do that. Thompson said in that call, quote, the way I was talking on the phone is going to seal my fate. He has never disputed that below or on appeal. And going back to those call summaries, it is somewhat confusing because as the questions from the court, I think, indicated, Appendix 71 is, again, that November 18, I think, hearing for attorney Billings to withdraw. There, Mr. Thompson is telling the court, I didn't get one scrap of paper, if you recall, not one piece of paper regarding that Conspiracy 1 anyway. And those call summaries, of course, my count, they're in the appendix, 24 of those regarded Conspiracy 1. So according to his own statements initially to the court, he never got those before his plea. So query how the purported misleading quotation marks could have possibly rendered his plea involuntary or unknown if he didn't get it. To be sure, later in his written motion, it's at page 146 of the appendix, he initially states that he didn't have the copies, a copy of the summaries before his plea. And then later in the same page, indicates that he was still disputing the validity of those quotes before his plea. And with that, I think the most important thing to take away from that is that, and Judge Hornby, I think, touched on this, it was Thompson himself with whatever attorney, whether it was Billings or Valancourt or Mr. Vincent ultimately, it was Thompson himself who ultimately flagged the discrepancies between the quotes and what was actually said. And if you look at that third call from Thompson five days before his plea, it's clear that Thompson knew at that point that those were paraphrases that the other witnesses, the other co-conspirators were going to come in and say that's what it meant. And we disagree that there was any misleading aspect of that. That was the prosecutor responding to Attorney Billings' request for call it ammunition or give me information about which of these calls pertain to my client and how the prosecutor provided internal work product. And because a third or first, it's unclear depending on which version of Mr. Thompson's facts you want to adopt, but because the defense misunderstood the quotation marks, which Thompson readily corrected, but certainly by no means a misrepresentation. I guess that's the issue. He just needs a fair and just reason to be able to withdraw. So say the government did nothing wrong, they're not responsible for him misunderstanding it. Because the question is, if a defendant wants to withdraw a plea because they represented the court, I misunderstood the nature of the evidence against me when I pled. Is that a fair and just reason for withdrawing the plea or not? How are we supposed to figure that out? Only Judge Barron, if you are required, you the district judge, is required to accept that at face value. And that goes back, I think, to where Chief Judge Lynch led off, that the Rule 11 here was not only meticulous, it was quite thorough. In fact, going back to the question. But we wouldn't have gotten to this point, though. We wouldn't have addressed this. If his point is that, yes, I said everything that you said I said, I completely understand what's going on, all that, it's just if he subsequently says, but that was all based on a misunderstanding of the nature of the evidence against me, is that a fair and just reason for now moving to withdraw? No, the court can readily find that that's contradicted by the record, by his own statements, and incredible. And I think those were both fair conclusions on the district court's part here. And we might be doing something different if there was something that Mr. Thompson had pointed to after reviewing the evidence and the calls and matching them up with the summaries and saying, look, had I known this, I would not have pleaded guilty. I really want my day in trial. But we've seen nothing of that. It's almost like I just want to do over to plead guilty again. And, again, it goes back to the prosecution version facts, which summarized the calls, in addition to other evidence, meaning that these other cooperating conspirators are going to come in and testify. So there was other evidence. But the accuracy of the description of those calls in the prosecution version has never been disputed. The defendant himself told the Rule 11 court it was accurate and that he had no disputes with it. And to date, we have never had that dispute. So on that record, unless the court has questions, we would ask that the court affirm. Thank you. Ms. Davis. The defendant never heard the calls or saw the transcripts before he was called upon to plea. That, combined with the fact that his lawyer encouraged him, coerced him, or pressured him to plea by even writing to the government to provide more ammunition if they want to convince him to plea after the lawyer had the calls and the transcripts. However, Thompson was confused and just befuddled by the fact that he's accused of speaking these words that he never spoke. And he's asking again and again, please come down, please bring a computer, please let me listen to the calls. He never had an opportunity to hear the calls. I don't know anywhere in the record where it says that he has to this date heard these calls and I do not believe he has heard all of the calls. I know that Attorney Vincent has listened to some of the calls. But when you read through the record, you will see that when Mr. Billings, the first attorney, went with some of the tapes, his computer didn't work. Mr. Vincent did not have an opportunity because the client was transferred to a jail where someone had to sit there with him while he listened. Thank you. Thank you, Ms. Davis.